UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W. CALFEE, III,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM K. GRAHAM, et al.,<br><br>Defendants. | No. 2:14-cv-01395-JAM-AC<br><br><br><br>ORDER |

On September 16, 2015, the court held a hearing on plaintiffs' motion to compel. Frank Crum appeared on behalf of plaintiff David W. Calfee, III; and Jason J. Sommer appeared on behalf of the subpoenaed witnesses James V. Nolan, Gardner Janes Nakken Hugo and Nolan ("Gardner Janes"), and Hansen Kohls Sommer & Jacob, LLP ("Hansen Kohls") (collectively "the Witnesses"). James V. Nolan was also present at the hearing. On review of the motions, the documents filed in support and opposition, upon hearing the arguments of plaintiff and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

## FACTUAL BACKGROUND

Plaintiff, an attorney, seeks to collect from defendants, his former clients, unpaid fees and costs advanced in a state court matter, Young J. Paik, et al. v. Richard T. Treon, et al., Case No. PT09-320 (Yolo Cnty. Super. Ct.) ("Underlying Lawsuit"). ECF No. 1 at 24; ECF No. 20-1 at 2. The Underlying Lawsuit was a single cause of action for malicious prosecution against James V.

1

1  Nolan, Gardner Janes, William K Graham, Thomas P. Church, Michele A. Church, and Michael
2  U. Sbrocco, III.  ECF No. 1 at 2; ECF No. 20-1 at 2.  Plaintiff represented William K Graham,
3  Thomas P. Church, Michele A. Church, and Michael U. Sbrocco, III in the Underlying Lawsuit,
4  while James V. Nolan and Gardner Janes were represented by Jason Sommer and his firm,
5  Hansen Kohls.  Id.  Plaintiff obtained a judgment of dismissal in the Underlying Lawsuit on April
6  13, 2010.  ECF No. 20-1 at 2.  Plaintiff asserts that at the conclusion of the matter in July 2010,
7  the unpaid balance of plaintiff's attorneys' fees and advanced costs totaled $91,602.  Id.  Plaintiff
8  has asserted his claims against defendants in order to retrieve these costs.  Id.  The court's
9  jurisdiction rests on diversity.  ECF No. 1 at 1.

## PROCEDURAL BACKGROUND

11  Plaintiff filed his original complaint on June 11, 2014.  ECF No. 1.  On August 20, 2014,
12  defendant William K. Graham filed an answer.  ECF No. 5.  On September 5, 2014, plaintiff and
13  defendant Graham filed a joint statement.  ECF No. 6.  In the parties' joint statement plaintiff
14  stated that he had so far been unable to serve the remaining defendants despite repeated attempts.
15  Id.  Accordingly, plaintiff requested additional time to serve the remaining defendants.  Id.  On
16  September 10, 2014, the court issued a scheduling order granting plaintiff's request, with a
17  discovery deadline of September 10, 2015, and dispositive motions deadline of October 7, 2015.
18  ECF No. 7.
19  The remaining defendants filed answers on October 10, 2014, identical to defendant
20  Graham's.  ECF Nos. 11–13.  On August 14, 2015, plaintiff and the Witnesses filed a joint
21  statement regarding the pending discovery dispute.  ECF No. 18.  Plaintiff, however, had not filed
22  a properly noticed motion at that point.  Accordingly, on August 17, 2015, the court ordered
23  plaintiff to file a properly noticed motion to compel in accordance with Local Rule 251.  ECF No.
24  19.  On the same day, plaintiff filed a properly noticed motion to compel, requesting that the court
25  compel the Witnesses to produce documents responsive to subpoenas issued on June 19, 2015.
26  ECF No. 20.  Along with his motion plaintiff re-submitted the joint statement.  Id.  On September
27  2, 2015, Hansen Kohls filed an opposition to plaintiff's motion, claiming it was never served with
28  plaintiff's motion and opposing it based on the joint statement.  ECF No. 22.

DISCOVERY BACKGROUND

According to the joint statement, plaintiff seeks the billing records and payment documents from the Underlying Lawsuit for James V. Nolan and Gardner Janes. ECF No. 20-1 at 2. Plaintiff asserts that these documents are relevant to defendants' claim that the amount plaintiff charged them for representation in the Underlying Lawsuit was exorbitant. Id. Specifically, defendants have stated that James V. Nolan and Gardner Janes were charged a fraction of the amount that defendants were charged for representation in the Underlying Lawsuit. Id. Plaintiff served the subpoena requesting these documents upon the Witnesses by July 13, 2015, on June 19, 2015. Id. The subpoena requested the following documents:

> 1. All billing records including but not limited to invoices from the first date of representation to the conclusion of YOUR representation of attorney James V. Nolan and the law firm of Gardner, Janes, Nakken, Hugo, and Nolan in the lawsuit styled Young J. Paik. et al v. Richard T. Treon. et al. Yolo County Superior Court case no. PT09-320.  This request only seeks nonprivileged information including ~~general description of tasks performed,~~[1] time spent, billing rate and amounts charged. Redaction of any privileged information is requested.
>
> 2. All DOCUMENTS for any and all payments made to YOU for YOUR representation of attorney James V. Nolan and the law form of Gardner, Janes, Nakken, Hugo, and Nolan in the lawsuit styled Young J. Paik. et al v. Richard T. Treon. et al. Yolo County Superior Court case no. PT09-320.  This request only seeks non-privileged information including amounts paid. Redaction of any privileged information is requested.
>
> 3. All billing records including but not limited to invoices from the first date of representation to the conclusion of YOUR representation of attorney James V. Nolan and the law firm of Gardner, Janes, Nakken, Hugo, and Nolan in the lawsuit styled Young J. Paik. et al v. Richard T. Treon. et al. California Court of Appeal, Third Appellate District case no. C064528.  This request only seeks nonprivileged information including ~~general description of tasks performed,~~ time spent, billing rate and amounts charged. Redaction of any privileged information is requested.
>
> 4. All DOCUMENTS for any and all payments made to YOU for YOUR representation of attorney James V. Nolan and the law form of Gardner, Janes, Nakken, Hugo, and Nolan in the lawsuit styled Young J. Paik. et al v. Richard T. Treon. et al. California Court of

---

[1] The interlineated language (general description of tasks performed) is the language removed from the requests during the meet and confer process.

3

1
2
> Appeal, Third Appellate District case no. C064528.  This request only seeks non-privileged information including amounts paid.  Redaction of any privileged information is requested.

ECF No. 21-1 at 4.

On July 6, 2015, Jason Sommer of Hansen Kohls served plaintiff with objections to his subpoena. Id. at 2–3.  The Witnesses objected to production of the requested documents based on the contention that the documents are (1) protected by attorney client privilege and the work product doctrine; (2) protected by both the U.S. Constitution's and the California Constitution's right to privacy; and (3) not reasonably calculated to lead to the discovery of admissible evidence. Id. at 5–9.  The Witnesses also assert that production of the requested documents would be unduly burdensome. Id. at 9–11.

Plaintiff's attorney sent a meet and confer letter to Jason J. Sommer and James V. Nolan narrowing the scope of discovery and responding to their objections on July 9, 2015. Id. at 3.  On July 21, 2015, Sommer responded by letter with an explanation for why he believed he still could not produce the requested documents. Id.  In his letter, Sommer asserted that the information sought was protected by James V. Nolan and Gardner Janes' rights to privacy. Id.  In addition, Sommer claimed that the information sought was neither admissible nor was it likely to lead to the discovery of admissible evidence. Id.  On July 29, 2015, plaintiff's attorney conferred with Sommer and Nolan over the phone. Id.  When the telephone conference did not resolve the dispute, they agreed to prepare a joint statement. Id.

## LEGAL STANDARDS

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).  Under Rule 45, any party may serve a subpoena commanding a third party to produce documents. Fed. R. Civ. P 45(a)(1)(A)(iii).  A person commanded to produce documents may serve a written objection to the subpoena. Fed. R. Civ. P 45(d)(2)(B).  If the commanded person withholds subpoenaed

1  information under a claim that it is privileged, the person must (1) expressly make the claim, and
2  (2) describe the nature of the withheld documents in a manner that will enable the parties to
3  assess the claim.  Fed. R. Civ. P. 45(e)(2)(A).  The serving party may, at any time, on notice to
4  the commanded person, move the court for an order compelling production.  Fed. R. Civ. P.
5  45(d)(2)(B)(I).
6      "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any
7  party's claim or defense. . . .  Relevant information need not be admissible at the trial if the
8  discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R.
9  Civ. P. 26(b)(1).  Generally, the scope of discovery under Rule 26(b)(1) "has been construed
10 broadly to encompass any matter that bears on, or that reasonably could lead to other matters that
11 could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437
12 U.S. 340, 351 (1978).  Evidence is relevant if it has "any tendency to make the existence of any
13 fact that is of consequence to the determination of the action more probable or less probable than
14 it would be without the evidence."  Fed. R. Evid. 401.  The court must limit discovery when "the
15 burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P.
16 26(b)(2)(C)(iii).  The court may also limit the extent of discovery to protect a party or person
17 from annoyance, embarrassment, oppression, undue burden or other improper purposes.  Fed. R.
18 Civ. P. 26(c)(1), 26(g)(1)(B)(ii).

19 ANALYSIS
20   I.      Attorney-Client Privilege and Attorney Work Product
21     The court finds that the Witnesses' billing records are not protected by attorney client
22 privilege.  In a federal action based on diversity of citizenship jurisdiction, state law governs
23 privilege claims.  Fed. R. Evid. 501; Upjohn Co. v. Hygieia Biological Labs., 151 F.R.D. 355,
24 358 (E.D. Cal. 1993).  As the court explained at the hearing, California law regarding the
25 application of attorney-client privilege to billing statements is currently in flux.  A recent
26 California Court of Appeals case that explicitly held such billing statements *are* protected by
27 attorney-client privilege was vacated when the California Supreme Court granted a petition for
28 review.  Cnty. of Los Angeles Bd. of Supervisors v. Superior Court of Los Angeles Cnty., 235

5

1  Cal. App. 4th 1154, 185 Cal. Rptr. 3d 842, 858 review granted and opinion superseded sub nom.
2  Cnty. of Los Angeles Bd. of Sup'rs v. S.C. (ACLU of S. California), 351 P.3d 329 (Cal. July 8,
3  2015). ACLU of S. California is the only case cited by the Witnesses directly addressing the
4  applicability of attorney-client privilege to billing statements. ECF No. 20-1 at 5. What's more,
5  the Witnesses do not explain why it is billing statements are protected by California's attorney-
6  client privilege in any way, either in their initial objections or the joint statement. Id. at 5–6. At
7  the hearing, the Witnesses asserted that attorney billing statements are protected by California
8  statute but did not point to any authority supporting that proposition. The Witnesses, accordingly,
9  have not met their burden of showing that the attorney client privilege applies in this instance.
10 See Kandel v. Brother Int'l Corp., 683 F. Supp. 2d 1076, 1082 (C.D. Cal. 2010).[2]

11   II.   Right to Privacy

12     The court also finds that the Witnesses' billing records are not protected by any right to
13 privacy. The Witnesses do not address their right to privacy argument in the joint statement at all.
14 Instead, they assert that the billing statements at issue contain trade secret information. ECF No.
15 20-1 at 9. This argument fails for two reasons. First, the Witnesses have waived this argument
16 because they did not raise it in a timely objection. See Richmark Corp. v. Timber Falling
17 Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992). Second, they cite to no controlling authority in
18 support of the proposition that billing rates are trade secret proprietary information in the legal
19 industry.[3] The Witnesses assert that "[c]ompetitors could use this information in an effort to
20 solicit Sommer's clients and there are no safeguards to prevent it [sic] use for this or other
21 purposes." ECF No. 20-1 at 9. Such an assertion, without more, is simply not enough to

---

[2] The Witnesses concede in the joint statement that the billing statements are not covered by the attorney work product doctrine. ECF No. 20-1 at 7.

[3] The only case the Witnesses do cite is Courtesy Temp. Serv., Inc. v. Camacho, 222 Cal. App. 3d 1278, 1288 (Cal. Ct. App. 1990), which involved not only billing information, but a customer list and mark up rates. It is well established, of course, that customer lists can constitute trade secret information. See, e.g., Greenly v. Cooper, 143 Cal. Rptr. 514 (Ct. App. 1978). At the hearing, the Witnesses argued that Camacho holds *specifically* that pricing information can constitute a trade secret. This, however, is simply not the case. See Camacho, 222 Cal. App. 3d at 1287.

1   establish that the billing information is trade secret.[4]

2   Even if the Witnesses had argued in their joint statement that their billing statements are
3   protected by the right to privacy, that argument would likely fail. First and foremost, the
4   Witnesses do not specify what privacy right is at issue. ECF No. 20-1 at 7. The Seaton case cited
5   by the Witnesses makes clear that the court must balance the government's interest in obtaining
6   information with the individual's privacy interest *if and only if* the party opposing disclosure has
7   established a constitutional right to privacy is at stake. Seaton v. Mayberg, 610 F.3d 530, 539
8   (9th Cir. 2010). In their objections, the Witnesses do not even specify *whose* privacy rights
9   would be violated if the billing records were produced, much less *what* privacy right exactly
10  would be at issue. ECF No. 20-1 at 7.

11  III.     Irrelevant and Unduly Burdensome

12  The court also finds that plaintiff's requests are neither irrelevant nor unduly burdensome.
13  The Witnesses argue that the billing records are not reasonably calculated to lead to the discovery
14  of admissible evidence primarily based on an unfounded assertion: that defendants' claim that
15  they were charged exorbitant fees by plaintiff in light of the Witnesses' much smaller fees is
16  somehow hearsay. ECF No. 20-1 at 10–11. Out of court statements used to prove the truth of the
17  matter asserted are hearsay. See Williams v. Illinois, 132 S. Ct. 2221, 2231 (2012). Defendants'
18  assertion that James V. Nolan and Gardner Janes were charged far less than they were in the
19  Underlying Lawsuit is not even a statement, much less an out of court one used to prove the truth
20  of the matter asserted.

21  The Witnesses also assert that the information requested is irrelevant because, per their
22  agreement with plaintiff, the documents will not include any description of the work that was

---

[4] For one thing, the Witnesses have not established that the billing information is a secret. See Whyte v. Schlage Lock Co., 125 Cal. Rptr. 2d 277, 285 (2002) ("A 'trade secret' is 'information, including a formula, pattern, compilation, program, device, method, technique, or process that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'" (citing Cal. Civ. Code § 3426.1)).

7

performed. ECF No. 20-1 at 10–11. According to the Witnesses, the billing statements are useless to plaintiff if he cannot compare his rates to Hansen Kohls' along with a description of the work performed. Id. This is simply not the case. Hansen Kohls' rates in the Underlying Lawsuit are relevant to defendants' claim that plaintiff's rates were exorbitant in comparison to the rates Hansen Kohls charged James V. Nolan and Gardner Janes. Not having a general description of the work performed by Hansen Kohls does not make that information irrelevant.

Finally, the Witnesses assert that there are less intrusive ways for plaintiff to establish that his fees were reasonable and necessary than to require Sommer and Nolan to review and redact their billing records. ECF No. 20-1 at 11. Specifically, the Witnesses argue that plaintiff could hire an expert witness to opine on whether plaintiff's rates were reasonable in light of his experience and the work he performed. Id. Not only would such testimony be a more effective indicator of the reasonableness of plaintiff's rates, it would relieve Hansen Kohls of the responsibility of sifting through and redacting its billing records. Id. Although the Witnesses are correct that an expert witness might be able to provide worthwhile testimony on the reasonableness of plaintiff's rates, that expert witness would not be able to rebut defendants' claim that plaintiff's rates were exorbitantly higher than Hansen Kohls'. Accordingly, the Witnesses have not identified an alternative, less intrusive way to obtain the information included in Hansen Kohls' billing records.

## CONCLUSION

In accordance with the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel, ECF No. 20, is GRANTED.

2. The Witnesses must produce the documents requested by plaintiff's subpoenas, as narrowed by the meet and confer process, within fourteen (14) days.

DATED: September 21, 2015

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE