UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W. CALFEE, III,<br><br>        Plaintiff,<br><br>   v.<br><br>WILLIAM K. GRAHAM aka BILLY GRAHAM, THOMAS P. CHURCH aka TOM CHURCH, MICHELE A. CHURCH, MICHAEL U. SBROCCO III aka MIKE SBROCCO and DOES 1 through 10, Inclusive,<br><br>        Defendants. | No. 2:14-cv-01395-JAM-AC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

    This matter is before the Court on a motion for summary judgment submitted by defendants William K. Graham ("Graham"), Thomas P. Church ("Thomas Church"), Michele A. Church ("Michele Church"), and Michael U. Sbrocco III ("Sbrocco") (collectively "Defendants") (Doc. #26). Plaintiff David W. Calfee, III ("Calfee") opposes the motion (Doc. #30).[1]

///

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for November 18, 2015.

1

I.   FACTUAL BACKGROUND

In late June 2009, Defendants hired the law firm Calfee Konwinski ("the firm") to represent Defendants in Paik v. Treon, Yolo County Superior Court No. PT 09-320 ("underlying action"), a case filed against them for malicious prosecution in California state court. Mot., Exh. B; Opp., Exh. 2. Calfee was the attorney at the firm primarily responsible for the work in the underlying action. Id. Calfee presented Defendants with a written fee agreement ("Agreement"). Undisputed Material Fact ("UMF") #3. Under the terms of the Agreement, Defendants were expected to maintain a deposit of $10,000.00, from which the firm was to bill monthly charges. UMF #4. Statements for services were due upon presentation. Id. Defendants were required to pay within thirty days of the receipt of an invoice. UMF ## 4-5.

Calfee submitted five invoices to Defendants over the course of his representation, each of which notified Defendants that balances were due upon receipt of the statement and that unpaid balances would accrue interest after thirty days from the billing date. UMF ## 6-7. Each invoice provided a description of Calfee's professional services, as well as the date and the number of hours he spent on each task. Mot., Exh. D.

Defendants never paid an invoice in full. The firm only received a $5,000.00 "payment from account" on July 28, 2009, a $2,500.00 payment from Graham on August 6, 2009, and a $2,500.00 payment from Church on August 7, 2009. Id. The final invoice, dated August 5, 2010, stated that there was a balance due of $91,602.48. Id. This amount included fees for professional services rendered from late March to late June, an overdue

balance of $88,604.87, and interest on that overdue balance in the amount of $2,125.11. Id.

In connection with the overdue balance, Calfee sent a letter to Defendants on October 27, 2009. UMF #10. The letter notified Defendants that there was a substantial overdue balance and that the firm would withdraw from the underlying action if a payment plan was not agreed to by Defendants. Mot., Exh. E. The letter also notified Defendants that the firm was required to continue representing Defendants until Defendants signed a substitution of attorney form or the court authorized the firm's withdrawal. Id. Calfee eventually filed a motion to withdraw as counsel of record for Defendants in the underlying action. Calfee's Request for Judicial Notice (RJN); Opp., Exh. 3. The motion was granted on June 24, 2010. Id.

Calfee received a transfer and assignment of the firm's "right, title, and interest in and to any and all causes of action" against Defendants on June 9, 2014. Opp., Exh. 4. Calfee then filed this lawsuit on June 11, 2014, seeking damages in the amount of the unpaid balance of $91,602.48 (Doc. #1). Calfee alleged two causes of action: book account and account stated. Compl. at 1. Defendants answered the Complaint and subsequently filed this motion for summary judgment (Doc. #26).

## II.  OPINION

### A. Judicial Notice

Calfee seeks judicial notice pursuant to Federal Rule of Evidence 201 of the fact that the Court of Appeal of the State of California, Third Appellate District granted Calfee's motion to withdraw from the underlying case on June 24, 2010 (Doc. #30-

4).  RJN; Opp., Exh. 3.

A court may take judicial notice of a fact that is not reasonably disputed if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  On a motion to dismiss, courts are allowed to consider "matters of public record." Northstar Fin. Advisors Inc. v. Schwab Investments, 779 F.3d 1036, 1042 (9th Cir. 2015) (quoting Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010)).

The fact submitted by Calfee is in the public record and is not subject to reasonable dispute.  As such, the Court takes judicial notice of the fact that the Third Appellate District granted Calfee's motion to withdraw as counsel in the underlying action on June 24, 2010.

B.  Analysis

Defendants are seeking summary judgment based on their factual contention that the "full terms and conditions of [the agreement] were established by an express written contract." Mot. at 7.  Defendants further contend that the law prohibits plaintiffs from turning such an express contract into a book account or account stated cause of action.  Mot. at 5.  Given these two contentions, Defendants argue that summary judgment is appropriate because there is no genuine issue of material fact and no reasonable jury could return a verdict in favor of Calfee.

In opposition, Calfee objects to Defendants' factual contention that the full terms and conditions of the agreement were established by the contract, as well as to Defendants'

legal contention that an express contract cannot be a book account or account stated. Regarding the factual issue, Calfee argues that facts exist that demonstrate the parties agreed implicitly and explicitly to a book account arrangement. Opp. at 3. Regarding the legal issue, Calfee argues that the law allows a party to recover money under a book account and/or account stated theory even when a contractual relationship exists. Id. Calfee specifically contends "there is a triable issue of fact as to whether Defendants [explicitly or implicitly] agreed to a book account." Opp. at 5.

Book account and account stated causes of action are considered to be "common counts" under California law. Fagelbaum & Heller LLP v. Smylie, 174 Cal.App.4th 1351, 1355 (2009). Common counts are proper when a party is seeking the payment of money they are owed due to a debt or due to providing services or goods. Kawasho Internat., U.S.A. Inc. v. Lakewood Pipe Serv., Inc., 152 Cal.App.3d 785, 793 (1983). Common counts are used to recover a certain sum of money "without necessarily specifying the nature of the claim." Martini E Ricci Iamino S.P.A.--Consortile Societa Agricola v. Trinity Fruit Sales Co., 30 F.Supp.3d 954, 975 (E.D. Cal. 2014) [hereinafter "M&R v. Trinity 1"].

### 1. Book Account

A book account is defined in California by statute as:

> A detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or

```
           fiduciary, and is kept in a reasonably permanent form
           and manner and is (1) in a bound book, or (2) on a
           sheet or sheets fastened in a book or to backing but
           detachable therefrom, or (3) on a card or cards of a
           permanent character or is kept in any other reasonably
           permanent form and manner.
```

Cal. Civ. Proc. Code § 337a.

Here, the arrangement at issue meets the statutory definition of a book account. The billing statements provided detailed statements of the transactions between Calfee and the Defendants. The billing statements formed the principal record of the parties' debits and credits. And the billing statements were made in the course of regular business and were kept in a reasonably permanent form and manner. Defendants do not contest any of these findings. Instead, Defendants argue that the parties never agreed to form a book account and, therefore, Calfee cannot now bring a book account cause of action.

A book account is created by an agreement by words or conduct of the parties in a commercial transaction. M&R v. Trinity 1, 30 F.Supp.3d at 975 (quoting H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp., 99 Cal.App.3d 711, 728 (1979)). Thus, "in deciding whether a book account exists the court must examine the agreement, or lack of agreement, between the parties and their conduct in the context of their commercial dealing." Maggio, Inc. v. Neal, 196 Cal.App.3d 745, 752 (1987). Though express contracts, as a general rule, are not considered book accounts, parties can overcome this presumption by treating the contract as a book account. Costello v. Bank of Am. Nat. Trust & Sav. Ass'n, 246 F.2d 807, 812 (9th Cir. 1957); see also Tsemetzin v. Coast Fed.

6

1  Sav. & Loan Assn., 57 Cal.App.4th 1334, 1343 (1997) ("It seems to
2  be well settled that monies which become due under an *express*
3  contract . . . cannot, *in the absence of a contrary agreement*
4  *between the parties*, be treated as items under an open book
5  account.") (emphasis in original).  An express agreement to form
6  a book account is not required for contracts that do not specify
7  in advance the time and amount of payment.  In re Roberts Farms
8  Inc., 980 F.2d 1248, 1253 n.3 (9th Cir. 1992) [hereinafter
9  "Roberts Farms"] ("California courts only require that the
10 parties expressly intend to be bound by an open book account when
11 there is an express contract that sets the time and amount of
12 payment.").  "The mere incidental keeping of accounts does not
13 alone create a book account."  Maggio, 196 Cal.App.3d at 752.
14      In a motion for summary judgment, the moving party bears the
15 initial responsibility of identifying evidence that demonstrates
16 "there is no genuine dispute as to any material fact," thereby
17 showing that the moving party is "entitled to judgment as a
18 matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett,
19 477 U.S. 317, 323-24 (1986).  Here, Defendants argue that the
20 undisputed material fact that entitles them to summary judgment
21 is that the parties agreed to place the full terms of their
22 agreement into an express written contract.  In support of this
23 argument, Defendants allege that Calfee provided Defendants with
24 a written fee agreement that included specific terms that
25 governed, among other things, the payment amount, payment
26 deadlines, and minimum deposits.  Mot. at 1-2; UMF ## 3-4.
27      In a summary judgment motion, once the movant demonstrates,
28 as Defendants did here, an absence of evidence supporting the

Case 2:14-cv-01395-JAM-AC   Document 36   Filed 12/18/15   Page 8 of 14

nonmoving party's case, the burden shifts to the opposing party to "set forth specific facts showing that there is a genuine issue for trial." Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)). Here, Calfee objects to Defendants' characterization of the written contract as indisputably containing the full terms of their agreement. Calfee points out that the Agreement contained fourteen variable factors that were used to calculate the amount due. Opp. at 4-5. Calfee contends that these variable factors, as well as the billing statements provided an explanation for the sums owed and indicate an explicit or implicit agreement to form a book account. Id. at 7.

The variable factors in the Agreement are evidence that the parties implicitly agreed to form a book account arrangement. Calfee submitted to the Defendants detailed billing statements that summarized and described the work completed and the number of hours billed. Mot., Exh. D. Calfee identifies fourteen variable factors in the Agreement that were used to calculate the amount due. Opp. at 4-5; Opp., Exh. 2. The amount due on any billing statement depended entirely on these variable factors, as well as on what services the firm had performed during the billing period. As such, the billing statements did not charge identical amounts. For example, the July 28, 2009 invoice charged $29,000.75, while the September 18, 2009 invoice charged $33,057.75 for the services provided during the respective billing periods. Mot., Exh. D. Since these billing statements were the only record of services performed by the firm, they were not merely incidental. Instead, the invoices were the only and

8

official source for determining what amount Defendants owed Calfee.

The variable factors in the Agreement render this arrangement nearly identical to the contract at issue in <u>Roberts Farms</u>. There, the court denied summary judgment after pointing out that the contract at issue was for legal services and that "no set amount was determined to be due each month." <u>Roberts Farms</u>, 980 F.2d at 1253. Moreover, the court considered the billing statements to be "detailed permanent records that reflect the ongoing relationship between [the parties]." <u>Id.</u> As the court explained, because the express contract did not set the "time and amount of payment," neither party needed to expressly intend to be bound by the records in order to create a book account. <u>Id.</u> at 1252 n.3. In <u>Roberts Farms</u>, just as in this case, "the only source available to determine what and when [the defendant] owed payment" was the plaintiff's records. <u>Id.</u>

The contracts at issue here and in <u>Roberts Farms</u> are significantly different than the arrangements at issue in cases in which summary judgment was ultimately granted. For example, in <u>Martini E Ricci Iamino S.P.A.--Consortile Societa Agricola v. W. Fresh Mktg. Servs., Inc.</u>, 54 F.Supp.3d 1094 (E.D. Cal. 2014)[hereinafter "<u>M&R v. Fresh</u>"], the court granted summary judgment in favor of the defendant on a book account cause of action based on a consignment agreement. In granting the motion, the court reasoned that "no documents have been produced that would fit the description of a book account" and that M&R did "not address or defend this [book account] cause of action." <u>M&R v. Fresh</u>, 54 F.Supp.2d at 1106-09. In a related case the court

1  first denied summary judgment because it found that an email
2  containing a statement of debt allegedly owed along with various
3  deductions "might constitute an account stated" and that the
4  parties "could have agreed to maintain a book account." M&R v.
5  Trinity 1, 30 F.Supp.3d at 977.  After allowing the parties to
6  submit a second summary judgment motion with further fact
7  development and briefing, the court concluded that there was no
8  evidence that the parties agreed to a book account. Martini E
9  Ricci Iamino S.P.A. v. Trinity Fruit Sales Co., No. 1:13-CV-276
10 AWI SAB, 2014 WL 4446293, at *10 (E.D. Cal. Sept. 9, 2014)
11 [hereinafter "M&R v. Trinity 2"].  Key to the court's reasoning
12 was the fact that the defendant had not accepted bookkeeping from
13 the plaintiff and that any recordkeeping was therefore
14 incidental. Id.
15      The instant case contrasts with the series of cases
16 involving M&R.  Unlike in M&R v. Fresh, Calfee has alleged and
17 defended a book account cause of action.  Also unlike M&R v.
18 Fresh, the parties have identified a document — the billing
19 statement — that could fit the description of a book account.
20 Finally, unlike M&R v. Trinity 2, there is evidence supporting
21 the notion that Defendants agreed to have Calfee's bookkeeping
22 establish the amount of money due.  Thus, this case is more
23 similar to Robert Farms than to M&R v. Fresh, M&R v. Trinity 1,
24 and M&R v. Trinity 2.
25      As the case law makes clear, in determining whether a book
26 account exists, courts are directed to examine both the agreement
27 and the parties' conduct. Maggio, 196 Cal.App.3d at 752.  As
28 another court in this district stated, "simply because there was

an express agreement between the parties . . . does not mean that no book account claim can be pursued." M&R v. Trinity 1, 30 F.Supp.3d at 978. Defendants' contention that contracts simply cannot be interpreted as book accounts does not account for the facts of this case or for the established law in this area. Though Defendants may well prevail at trial, at this point the court finds that Calfee has carried his burden of rebutting the motion for summary judgment. Calfee has identified specific facts, such as the variable terms in the agreement and a detailed and authoritative billing statement, that show there is a genuine issue as to whether the parties implicitly or explicitly agreed to form a book account arrangement.

        2.    Account Stated

Calfee contends that an account was stated in writing on August 5, 2010, in the amount of $91,602.48. Compl. ¶ 25. Calfee further argues that Defendants impliedly agreed to pay this balance by not disputing the amount. Id. Defendants moved for summary judgment on the account stated cause of action for much the same reason as they did for the book account cause of action. Defendants argue that Calfee "cannot establish the elements" of an account stated cause of action because "it is undisputed that the full terms and conditions of his agreement with defendants were established by an express written contract." Mot. at 7. Calfee concedes that the dismissal of the book account cause of action would automatically result in the dismissal of the account stated cause of action. Opp. at 7. But Calfee maintains that the August 5, 2010 billing statement represented an account stated and that Defendants' silence with

respect to that statement constituted implied assent. Id. at 8. At the very least, Calfee argues, the issue of whether Defendants objected to the billing statements is a disputed fact that renders summary judgment inappropriate with respect to the account stated cause of action. Id.

An account stated is an "agreement, based on prior transactions between the parties, that all items of the account are true and that the balance struck is due and owing from one party to the other." S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1091 (9th Cir. 1989) (quoting Trafton v. Youngblood, 69 Cal.2d 17, 25 (1968)). An account stated "constitutes a new contract which supersedes and extinguishes the original obligation." Zinn v. Fred R. Bright Co., 271 Cal.App.2d 597, 604 (1969). There are three essential elements to an account stated cause of action: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." Id. at 600. Both parties must agree to the new amount owed, but assent can be implied from the circumstances. Hansen v. Fresno Jersey Farm Dairy Co., 220 Cal. 402, 408 (1934). Importantly for this case, "[w]hen a statement is rendered to a debtor and no reply is made in a reasonable time, the law implies an agreement that the account is correct as rendered." Maggio, 196 Cal.App.3d at 753.

Here, Calfee has sufficiently shown that the August 5, 2010 billing statement met the requirements of an account stated. Previous transactions between the Defendants and Calfee —

12

including the July 28, 2009, September 18, 2009, December 23, 2009, and May 19, 2009 billing statements, as well as the payment of $5,000.00 on July 28, 2009, $2,500.00 on August 6, 2009, and $2,500.00 on August 7, 2009 — demonstrate that prior to August 5, 2010, there existed a debtor-creditor relationship. Mot., Exh. D. Additionally, the Court finds that there is a genuine issue of material fact as to (1) whether the Defendants impliedly agreed on the amount they owed to Calfee and (2) whether Defendants impliedly agreed to pay the amount stated on the August 5, 2010 invoice. Since "the law implies an agreement that the account is correct as rendered" when a statement is provided to a debtor and "no reply is made in a reasonable time," Maggio, 196 Cal.App.3d at 753, Calfee need not provide evidence of an explicit agreement to be bound by the alleged account stated. Given that Defendants have submitted no evidence that they objected to the amount of the final invoice or refused to pay the amount due, Defendants have failed to meet their burden of showing the absence of a genuine dispute as to any material fact. Thus, the Court denies Defendants' motion for summary judgment of Calfee's account stated cause of action.

      3.   <u>Leave to Amend</u>

Since the Court has denied the motion for summary judgment, it need not take up Calfee's request to "set a date for hearing on the issue of whether the scheduling order should be set aside to allow plaintiff to seek leave to amend the complaint to state a cause of action for breach of written contract." Opp. at 10.

III.  ORDER

For the reasons set forth above, the Court DENIES WITH PREJUDICE Defendants' Motion for Summary Judgment of Calfee's book account and account stated causes of action.

IT IS SO ORDERED.

Dated: December 17, 2015

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE